**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MARICEL CHACON,
an individual,

Case No.:

Plaintiff,

v.

EQUIFAX INFORMATION SERVICES LLC,
a foreign limited liability company, and
TRANS UNION LLC,
a foreign limited liability company,

Defendants.
__________________________________/

## COMPLAINT

**COMES NOW**, Plaintiff, MARICEL CHACON (hereinafter "Plaintiff"), by and through the undersigned counsel, and hereby files this Complaint against Defendants, EQUIFAX INFORMATION SERVICES LLC (hereinafter, "Equifax") and TRANS UNION LLC (hereinafter, "Trans Union") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1. This is an action brought by Plaintiff, an individual consumer, for damages for Defendants' violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein Defendants each failed to establish, maintain, and follow reasonable procedures to assure maximum possible accuracy in the preparation of credit reports and credit files published by Defendants—

with respect to a tradeline account furnished by RoadRunner Account Services Account (hereinafter, "RoadRunner")—following the discharge order entered in Plaintiff's bankruptcy case. More specifically, Defendants inaccurately, incompletely, and misleadingly credit reported a tradeline account furnished by RoadRunner as owed in excess of $37,000 without indicating or notating that such account was included in—and discharged through—Plaintiff's voluntary bankruptcy case, all despite Defendants reporting Plaintiff's bankruptcy case as well as numerous other tradeline accounts as included in and/or discharged through Plaintiff's bankruptcy case.

2. Additionally, this is an action brought by Plaintiff for damages for Equifax's violations of the FCRA wherein Equifax received a dispute from Plaintiff, yet Equifax failed to provide dispute results to Plaintiff.

## JURISDICTION, VENUE & PARTIES

3. Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681 *et seq*.

4. Defendants are each subject to the jurisdiction of this Court as Defendants regularly conduct business in this District.

5. Venue is proper in this District as the acts and transactions described herein originated and occurred in this District, Plaintiff filed her bankruptcy case in this District, and Plaintiff received a discharge order through her bankruptcy case in this District.

6. At all material times herein, Plaintiff is a natural person residing in

Orlando County, Florida.

7. At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia with its principal place of business located at 1550 Peachtree Street, NW, Atlanta, Georgia 30309.

8. At all material times herein, Trans Union is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

**FCRA STATUTORY STRUCTURE**

9. Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 United States Code, Section 1681b.

10. Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § 1681e(b) (emphasis added).

11. Further, under the FCRA, whenever a consumer reporting agency receives a dispute from a consumer, the consumer reporting agency is required to provide written notice to the consumer including the results of a reinvestigation not later than five (5) business days after the completion of the reinvestigation. *Id.* at § 1681i(a)(6).

12. Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

13. Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

**<u>GENERAL ALLEGATIONS</u>**

14. At all material times herein, Plaintiff is an alleged "consumer" as defined by the FCRA, Section 1681a(c) because she is an individual and allegedly obligated to pay a debt.

15. At all material times herein, Defendants each credit report information concerning a consumer credit card account furnished by RoadRunner and identified by account number ending -61 (hereinafter, the "Account").

16. At all material times herein, Equifax and Trans Union are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing

consumer reports. Equifax and Trans Union each disburse such consumer reports to third parties under contract for monetary compensation.

17. At all material times herein, Defendants acted themselves or through their respective agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

18. All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

### Plaintiff's Bankruptcy Case and Discharge Order

19. On or about August 9, 2023, Plaintiff filed a voluntary Chapter 7 bankruptcy case in the Middle District of Florida, Orlando Division, identified by case number 6:23-bk-03208-LLV (hereinafter, "Bankruptcy Case").

20. On or about September 20, 2023, Plaintiff filed the required schedules of her debts in Plaintiff's Bankruptcy Case.

21. Plaintiff listed RoadRunner in her Bankruptcy Case petition and bankruptcy schedules as a secured creditor with respect to the Account.

22. Plaintiff did not reaffirm the RoadRunner Account through her Bankruptcy Case.

23. As such, the RoadRunner Account was scheduled to be discharged through Plaintiff's Bankruptcy Case.

24. On or about November 21, 2023, the United States Bankruptcy Court

entered an Order of Discharge (hereinafter, "Discharge Order") in Plaintiff's Bankruptcy Case.

25. As such, as of November 21, 2023, the Discharge Order extinguished and eliminated Plaintiff's personal obligation with respect to the Account.

**Equifax's Credit Reporting of the Account**

26. On or about February 2024, Plaintiff obtained a copy of her credit disclosure report from Equifax.

27. Notably, Equifax reported Plaintiff's Bankruptcy Case in the public records section of her Equifax report and such section states "[t]he amount owed was included in the order for relief. Debtor no longer liable for debts listed in order of relief."

28. Additionally, in Plaintiff's report, Equifax reported *at least* six (6) tradeline accounts included in Plaintiff's Bankruptcy Case as "Bankruptcy chapter 7," "Bankruptcy petition," and "INCLUDED_IN_BANKRUPTCY" and reported such account balances as zero dollars ($0.00) or did not report a balance owed.

29. However, in Plaintiff's report, Equifax reported the RoadRunner Account with a balance owed in excess of $37,000.00 as of February 2024 and failed to mark or notate that the Account as included in and discharged through Plaintiff's Bankruptcy Case.

30. Equifax reported the RoadRunner Account as opened on March 8, 2023.

31. Therefore, Equifax clearly knew that the RoadRunner Account preceded the date of Plaintiff's Bankruptcy Case as an open account and Plaintiff did not

reaffirm the Account through her Bankruptcy Case, and therefore, such Account should also be marked as included in and/or discharged through Plaintiff's Bankruptcy Case with a zero-dollar ($0.00) balance owed.

32. Without such notation, a user of Plaintiff's Equifax report could reasonably conclude that the RoadRunner Account remains owing and due from Plaintiff as of February 2024.

33. On or about April 24, 2024, Plaintiff sent a letter to Equifax—with the assistance of her attorneys—wherein Plaintiff disputed Equifax's reporting of the RoadRunner Account balance and Equifax's failure to mark the Account as discharged.

34. Equifax received Plaintiff's dispute letter dated April 24, 2024.

35. On or about May 4, 2024, Equifax sent a letter to Plaintiff stating that Equifax could not identify Plaintiff's credit file and Equifax requested copies of documents to corroborate Plaintiff's identity.

36. On or about May 14, 2024, Plaintiff sent a letter to Equifax—again with the assistance of her attorneys—wherein Plaintiff enclosed a copy of her driver's license including her current address and a copy of her social security card showing her full social security number.

37. On or about May 25, 2024, Equifax sent *another* letter to Plaintiff, stating that Equifax needed a copy of Plaintiff's driver's license and social security card to process Plaintiff's dispute letter.

38. Despite Equifax receiving Plaintiff's dispute letter dated April 24, 2024

and Plaintiff's identifying documents through her letter dated May 14, 2024, Equifax failed to provide dispute results to Plaintiff.

39. On or about June 26, 2024, Plaintiff obtained a copy of her Equifax report because she did not receive any dispute results from Equifax.

40. Equifax clearly received and processed Plaintiff's dispute letter because between April 2024 and June 26, 2024, Equifax updated its reporting of the RoadRunner Account as included in bankruptcy and was no longer reporting a balance owed on the Account.

41. After the date of the Discharge Order was entered in Plaintiff's Bankruptcy Case, but before Equifax updated its reporting of the Account, Equifax prepared and published Plaintiff's credit information to her current creditors and potential lenders which included the RoadRunner Account balance and which failed to mark the RoadRunner Account as included in or discharged through Plaintiff's Bankruptcy Case.

**Trans Union's Credit Reporting of the Account**

42. On or about February 2024, Plaintiff obtained a copy of her credit disclosure report from Trans Union.

43. Notably, Trans Union reported Plaintiff's Bankruptcy Case in the public records section of her Trans Union report.

44. Additionally, on Plaintiff's report, Trans Union reported *at least* six (6) tradeline accounts included in Plaintiff's Bankruptcy Case as "CHAPTER 7 BANKRUPTCY" and did not report a balance owed on such accounts.

45. However, on Plaintiff's report, Trans Union reported the RoadRunner Account with a balance owed in excess of $37,000.00 as of February 2024 and failed to mark or notate that the Account as included in and discharged through Plaintiff's Bankruptcy Case.

46. Trans Union reported the RoadRunner Account as opened on March 8, 2023.

47. Therefore, Trans Union clearly knew that the RoadRunner Account preceded the date of Plaintiff's Bankruptcy Case as an open account and Plaintiff did not reaffirm the Account through her Bankruptcy Case, and therefore, such Account should also be marked as included in and/or discharged through Plaintiff's Bankruptcy Case with a zero-dollar ($0.00) balance owed.

48. Without such notation, a user of Plaintiff's Trans Union report could reasonably conclude that the RoadRunner Account remains owing and due from Plaintiff as of February 2024.

49. After the date of the Discharge Order was entered in Plaintiff's Bankruptcy Case, but before Trans Union updated its reporting of the RoadRunner Account, Trans Union prepared and published Plaintiff's credit information to her current creditors and potential lenders which included the RoadRunner Account balance and which failed to mark the RoadRunner Account as included in or discharged through Plaintiff's Bankruptcy Case.

**DAMAGES**

50. As a result of Defendants' unlawful reporting of the Account, Plaintiff

dealt with the stress and anxiety of feeling hopeless, believing that she would be denied credit as a result of the erroneous and incorrect reporting of the Account, and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain financing.

51. Overall, Plaintiff suffered damage to her credit reputation as a result of Defendants' conduct and did not receive the benefit of a fresh start following the conclusion of her Bankruptcy Case.

52. Plaintiff retained Swift Law PLLC for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

53. The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

54. As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making credit applications as she did not wish to further damage her credit score with futile credit inquiries, and she was continually evaluated for credit using consumer reports that reported the Account with a significant balance.

55. Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite receiving a discharge order in her Bankruptcy Case which legally discharged any balance owed on the RoadRunner Account, Plaintiff

must simply endure Defendants' erroneous reporting of the Account balance.

**COUNT ONE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**
**(As to both Equifax and Trans Union)**

Plaintiff re-alleges paragraphs one (1) through fifty-five (55) as if fully restated herein and further states as follows:

56. Equifax and Trans Union are each subject to, and both violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

57. Equifax and Trans Union each willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the discharged Account.

58. Despite Plaintiff receiving a discharge order in her Bankruptcy Case no later than November 21, 2023—which legally eliminated Plaintiff's personal liability with respect to the Account—Equifax and Trans Union subsequently reported the RoadRunner Account with a balance due in excess of $37,000 and failed to mark or otherwise indicate that the Account was included in and discharged through Plaintiff's Bankruptcy Case.

59. Notably, Equifax and Trans Union each reported Plaintiff's Bankruptcy Case in the public records section of Plaintiff's credit reports and each reported *at least* six (6) tradeline accounts as included in Plaintiff's Bankruptcy Case without reporting

a balance owed on such accounts.

60. Equifax's and Trans Union's reporting of the Account with a balance in excess of $37,000 is false and evidences Equifax's and Trans Union's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

61. Between November 2024 and May 2024, Equifax and Trans Union each generated and published Plaintiff's credit reports to Plaintiff's creditors and potential lenders including the above-referenced inaccurate, incomplete, and/or materially misleading information.

62. More specifically, between February 2024 and May 2024, Equifax generated and published Plaintiff's Equifax credit reports to Citibank, N.A., Atlanticus Holdings Corporation, Aspire, and Capital One Bank, N.A. at minimum, in addition to others.

63. Similarly, between February 2024 and May 2024, Trans Unions generated and published Plaintiff's Trans Union credit reports to First Premier, Tab/Mission Lane/TBOM/Milestone, and Merrick Bank at minimum, in addition to others.

64. Overall, Equifax and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files following the conclusion of Plaintiff's Bankruptcy Case.

65. As a result of Equifax's and Trans Union's conduct, actions, and

inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making additional credit applications as she believed she did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with an erroneous balance owed in excess of $37,000.

66. Equifax's and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

67. Equifax's and Trans Union's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT TWO:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(6)**
**(As to Equifax Only)**

68. Plaintiff re-alleges paragraphs one (1) through fifty-five (55) as if fully restated herein and further states as follows:

69. Equifax is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(6) by failing to provide written notice to Plaintiff of the results of a reinvestigation, by mail or, if authorized by Plaintiff for that purpose, by other means available to the agency.

70. More specifically, on or about April 24, 2024, Plaintiff sent a letter to Equifax—with the assistance of her attorneys—wherein Plaintiff disputed Equifax's reporting of the RoadRunner Account balance and Equifax's failure to mark the Account as discharged.

71. Equifax received Plaintiff's dispute letter dated April 24, 2024.

72. On or about May 4, 2024, Equifax sent a letter to Plaintiff stating that Equifax could not identify Plaintiff's credit file and Equifax requested copies of documents to corroborate Plaintiff's identity.

73. On or about May 14, 2024, Plaintiff sent a letter to Equifax—again with the assistance of her attorneys—wherein Plaintiff enclosed a copy of her driver's license including her current address and a copy of her social security card showing her full social security number.

74. On or about May 25, 2024, Equifax sent *another* letter to Plaintiff, stating that Equifax needed a copy of Plaintiff's driver's license and social security card to process Plaintiff's dispute letter.

75. Despite Equifax receiving Plaintiff's dispute letter dated April 24, 2024 and Plaintiff's identifying documents through her letter dated May 14, 2024, Equifax failed to provide dispute results to Plaintiff.

76. As such, Equifax's failure to provide Plaintiff with notice of its updated reporting is unreasonable.

77. Equifax did not utilize all the means available to it in order to provide Plaintiff with notice of the reinvestigation results.

78. Equifax had previously communicated or notified Plaintiff via letter, proving that Equifax was capable of notifying Plaintiff of the reinvestigation results and of Equifax's updated reporting of the Account.

79. Equifax's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

80. Equifax's violations of 15 United States Code Section 1681i(a)(6), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n and/or 1681o.

**PRAYER FOR RELIEF**

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a. Judgment against Equifax and Trans Union for maximum statutory damages for violations of the FCRA;

b. Actual damages in an amount to be determined at trial;

c. Compensatory damages in an amount to be determined at trial;

d. Punitive damages in an amount to be determined at trial;

e. An award of attorneys' fees and costs; and

f. Any other such relief the Court may deem proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues triable by right.

**SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE**

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

*/s/ Aaron M. Swift*

**Aaron M. Swift, Esq., FBN 0093088**
**Jordan T. Isringhaus, Esq., FBN 0091487**
**Sean E. McEleney, Esq., FBN 125561**
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 490-9919
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
smceleney@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*